## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN
## MILWAUKEE DIVISION

KIERRA SNOW,

      Plaintiff,

                                       Case No.:_____

v.

FCA US LLC, METHODE
ELECTRONICS, INC., and MIDAS
INTERNATIONAL CORPORATION,

      Defendants.

---

## COMPLAINT

---

**COMES NOW** Plaintiff, Kierra Snow, by and through her undersigned counsel, to sue Defendants, FCA US LLC, Methode Electronics, Inc., and Midas International Corporation, for the claims stated herein. In support thereof, Plaintiff states:

### INTRODUCTION

1. On April 28, 2015, Plaintiff, Kierra Snow ("Kierra"), was involved in a front-end collision while driving a 1996 Dodge Grand Caravan, VIN 1B4GP54L5TB350497 (the "Dodge Caravan"). At the time of the collision, Kierra was approximately eight months pregnant with her son, Tyriq.

2. When Kierra was involved in the April 28, 2015 collision, the Dodge Caravan's passenger-side front airbag deployed as designed, protecting the occupant seated in the Dodge Caravan's front passenger seat. However, Kierra's airbag did not deploy. Kierra's body—and more specifically her abdomen—consequently slammed into the Dodge Caravan's steering wheel, steering column, and dashboard, ultimately causing injury to Kierra and death to Tyriq.

3.     During an investigation of the collision, it was discovered that the Dodge Caravan's driver-side front airbag was not properly connected to the vehicle. Specifically, it was found that the airbag's clockspring assembly was not plugged in and was detached from the Dodge Caravan's electrical system. As a result, the Dodge Caravan's driver-side front airbag could not deploy in the event of any front-end collision, including the collision in which Kierra was involved.

4.     The Dodge Caravan's clockspring assembly was never connected during the vehicle manufacturing process or was made using such substandard and inferior-quality materials and processes that the clockspring assembly was prone to randomly disconnecting during the ordinary and foreseeable use of the vehicle.

5.     Additionally, the Dodge Caravan was not equipped with seatbelt pretensioners, a readily available safety technology that would have safely restrained Kierra's body in the event of a front-end collision and prevented Kierra's abdomen from slamming into the Dodge Caravan's steering wheel, steering column, and dashboard during the course of the subject collision.

6.     Defendant, Methode Electronics, Inc. ("Methode"), designed, manufactured, and installed component parts within the Dodge Caravan's airbag system, including the clockspring assembly.

7.     Chrysler Corporation designed and manufactured the Dodge Caravan in its entirety, and was therefore responsible for designing, manufacturing, assembling, and installing the Dodge Caravan's airbag system, including the clockspring assembly. Through a series of mergers, corporate transactions, and the final sale order of a federal bankruptcy court, Defendant, FCA US LLC ("FCA"), assumed legal responsibility for Chrysler Corporation's negligent

misconduct with respect to the Dodge Caravan. FCA is likewise legally responsible for its own negligent post-bankruptcy misconduct, including FCA's failure to issue a recall of the Dodge Caravan despite knowing of multiple incidents of similar vehicles not having a properly connected airbag clockspring assembly.

8.       Defendant, Midas International Corporation ("Midas"), shares responsibility with FCA and Methode. Less than two months prior to the collision that caused Kierra's injuries and Tyriq's death, Midas and its mechanics, service technicians, and employees performed a comprehensive inspection of the Dodge Caravan. Notwithstanding Midas's self-proclaimed expertise in the field of automotive repair, maintenance, and safety, Midas failed to discover or disclose that the Dodge Caravan's driver-side front airbag was inoperable, thereby allowing the Dodge Caravan to remain in an incredibly dangerous condition on the date of the subject collision.

9.       Kierra therefore brings this lawsuit to hold FCA, Methode, and Midas responsible for the wrongful death of her son and the severe personal injuries she suffered and continues to suffer to this day, which were directly caused by the negligent acts and omissions of Methode, Chrysler Corporation, FCA, and Midas.

## THE PARTIES

10.      At the time of filing this Complaint, Kierra is an Ohio citizen and resident.

11.      At the time the claims stated herein accrued, Kierra was a Wisconsin citizen and resident.

12.      At the time of filing this Complaint, FCA is a Delaware limited liability company. FCA is a wholly-owned subsidiary of Fiat Chrysler Automobiles N.V. Fiat Chrysler

Automobiles, N.V. is a Dutch corporation with its principal place of business located in the United Kingdom.

13.    FCA is registered with the Wisconsin Department of Financial Institutions and is authorized to do business in Wisconsin.  FCA may be served with process on its appointed registered agent in Wisconsin: CT Corporation System, 301 S. Bedford Street, Suite 1, Madison, WI 53703.

14.    At the time of filing this Complaint, Methode is a Delaware corporation with its principal place of business located in Chicago, Illinois.

15.    Methode is not registered with the Wisconsin Department of Financial Institutions and is not authorized to do business in Wisconsin.  Methode may be served with process on its registered agent in Illinois: CT Corporation System, 208 S. LaSalle Street, Suite 814, Chicago, IL 60604.

16.    At the time of filing this Complaint, Midas is a Delaware corporation with its principal place of business located in Palm Beach Gardens, Florida.

17.    Midas is registered with the Wisconsin Department of Financial Institutions and is authorized to do business in Wisconsin.  Midas may be served with process on its appointed registered agent in Wisconsin: Corporation Service Company, 8040 Excelsior Drive, Suite 400, Madison, WI 53717.

## FACTS

### The Subject Collision

18.    On April 28, 2015, Kierra was driving the Dodge Caravan westbound on 52nd Street in Kenosha, Wisconsin.

19.     At this place and time, Kierra was approximately eight months pregnant with her son, Tyriq.

20.     As Kierra was driving the Dodge Caravan, another vehicle suddenly entered the roadway from a parking lot adjacent to 52nd Street.

21.     Without sufficient time or space to avoid a collision, the front end of the Dodge Caravan crashed into the side of the other vehicle.

22.     Due to the velocity of the collision, the Dodge Caravan's passenger-side front airbag deployed as designed, protecting the occupant seated in the Dodge Caravan's front passenger seat.

23.     However, the Dodge Caravan's driver-side front airbag did not deploy as designed, failing to protect Kierra during the course of the collision.

24.     As a result of her airbag failing to deploy, Kierra's abdomen struck the Dodge Caravan's steering wheel, steering column, and dashboard.

25.     Kierra passed out following the collision. After regaining consciousness, Kierra unbuckled her seatbelt and exited the Dodge Caravan.  As she stepped out of the Dodge Caravan, Kierra immediately felt a "heavy" feeling and pain in her stomach.  Kierra subsequently passed out a second time and was transported by ambulance to a local hospital for emergency medical treatment.

26.     On April 29, 2015, Tyriq was delivered stillborn at the hospital.

27.     Tyriq passed away due to Kierra's stomach violently striking the Dodge Caravan's steering wheel, steering column, and dashboard during the subject collision.

28.     The driver of the other vehicle was found to be at fault and received a ticket for failing to yield the right-of-way.

29.     The Dodge Caravan contained a clockspring assembly in the steering wheel and steering column.

30.     A clockspring is a spiral wiring harness that is installed within a vehicle's steering column and permits the driver to turn the steering wheel while maintaining an electrical connection between the vehicle's electrical system and any steering-wheel mounted circuits, such as the driver-side front airbag.

31.     The Dodge Caravan's clockspring assembly was therefore responsible for providing electricity to the Dodge Caravan's driver-side front airbag so that the airbag is able to deploy in the event of a front-end collision.

32.     The Dodge Caravan's driver-side front airbag failed to deploy on April 28, 2015 because the clockspring assembly was improperly manufactured, assembled, and installed such that it failed to provide electricity to the driver-side front airbag.

33.     During an investigation of the collision, it was discovered that the Dodge Caravan's driver-side front airbag was not properly connected to the vehicle. Specifically, it was found that the airbag's clockspring assembly was not plugged in and was detached from the Dodge Caravan's electrical system.

34.     The Dodge Caravan's clockspring assembly was never connected during the vehicle manufacturing process or was made using such substandard and inferior-quality materials and processes that the clockspring assembly was prone to randomly disconnecting during the ordinary and foreseeable use of the vehicle.

35.     Had the Dodge Caravan's clockspring assembly been properly connected to the vehicle's electrical system, the airbag would have deployed during the subject collision, thereby protecting Kierra from injury and Tyriq from death.

36.     Additionally, the Dodge Caravan was not equipped with seatbelt pretensioners.

37.     A seatbelt pretensioner is a device that retracts a vehicle occupant's seatbelt upon sensing the abrupt deceleration of a collision, thereby pulling the occupant firmly and safely into his or her seat and restricting injurious movement during the course of a collision.

38.     Seatbelt pretensioners were inexpensive and readily available safety technologies available to Chrysler Corporation at the time it designed and manufactured the Dodge Caravan.

39.     Kierra was wearing her seatbelt at the time of the subject collision.

40.     Had the Dodge Caravan been equipped with seatbelt pretensioners, Kierra would have been safely restrained during the course of the subject collision, and Kierra's abdomen would not have struck the Dodge Caravan's steering wheel, steering column, and dashboard with the amount of force that ultimately injured Kierra and killed Tyriq.

## FCA's and Methode's Liability

41.     Methode designed, manufactured, assembled, installed, tested, inspected, and distributed component parts of the Dodge Caravan's airbag system, including the clockspring assembly.

42.     Methode negligently failed to properly connect the Dodge Caravan's clockspring assembly to the Dodge Caravan's electrical system.

43.     Methode negligently designed, manufactured, assembled, and installed the Dodge Caravan's clockspring assembly by designing, manufacturing, assembling, and installing the clockspring assembly in such a way that rendered it prone to disconnecting during its ordinary and foreseeable use.

Case 2:18-cv-00526-JPS     Filed 04/04/18     Page 7 of 47     Document 1

44.     Methode negligently failed to properly test, inspect, and ensure the quality of the Dodge Caravan's clockspring assembly, including by failing to ensure that the clockspring assembly was properly installed and connected to the Dodge Caravan's electrical system.

45.     Methode's negligent acts and omissions rendered the Dodge Caravan's driver-side front airbag inoperable in the event of a front-end collision like the subject collision.

46.     Chrysler Corporation designed and manufactured the Dodge Caravan and was responsible for designing, manufacturing, assembling, installing, testing, inspecting, and distributing the Dodge Caravan's airbag system, including the clockspring assembly.

47.     Chrysler Corporation negligently failed to properly connect the Dodge Caravan's clockspring assembly to the Dodge Caravan's electrical system.

48.     Chrysler Corporation negligently designed, manufactured, assembled, and installed the Dodge Caravan's clockspring assembly by designing, manufacturing, assembling, and installing the clockspring assembly in such a way that rendered it prone to disconnecting during its ordinary and foreseeable use.

49.     Chrysler Corporation negligently failed to properly test, inspect, and ensure the quality of the Dodge Caravan's clockspring assembly, including by failing to ensure that the clockspring assembly was properly installed and connected to the Dodge Caravan's electrical system.

50.     Chrysler Corporation's negligent acts and omissions rendered the Dodge Caravan's driver-side front airbag inoperable in the event of a front-end collision like the subject collision.

51.     Additionally, Chrysler Corporation negligently failed to equip the Dodge Caravan with all reasonably available safety technologies available to Chrysler Corporation at the time it designed and manufactured the Dodge Caravan, including seatbelt pretensioners.

52.     Chrysler Corporation's negligent failure to equip the Dodge Caravan with seatbelt pretensioners rendered the Dodge Caravan unreasonably dangerous during the course of a front-end collision like the subject collision.

53.     Due to Methode's and Chrysler Corporation's negligence, the Dodge Caravan's clockspring assembly failed to provide electricity to the driver-side front airbag when Kierra was involved in the subject collision.

54.     As a result, Kierra's airbag failed to deploy and Kierra's body struck the Dodge Caravan's steering wheel, steering column, and dashboard.

55.     Kierra suffered severe personal injuries and the death of her child, Tyriq, because Methode and Chrysler Corporation negligently designed, manufactured, assembled, installed, tested, and inspected the Dodge Caravan's clockspring assembly.

56.     Due to Chrysler Corporation's negligence, the Dodge Caravan was not equipped with seatbelt pretensioners, Kierra's body was not safely restrained within the Dodge Caravan, and Kierra's body was permitted to slam into the Dodge Caravan's steering wheel, steering column, and dashboard.

57.     FCA is legally responsible for the negligent acts and omissions of Chrysler Corporation.

58.     In 1998, Chrysler Corporation merged with German automaker Daimler-Benz-AG to form DaimlerChrysler Corporation. Through this merger, DaimlerChrysler Corporation assumed all of Chrysler Corporation's assets and liabilities with respect to the Dodge Caravan.

59.     In 2007, when the merger proved to be contentious with investors, Chrysler Corporation was sold to Cerberus Capital Management and renamed Chrysler LLC. Through this transaction, Chrysler LLC assumed all assets and liabilities with respect to the Dodge Caravan.

60.     In April 2009, Chrysler LLC filed for Chapter 11 bankruptcy protection in the United States Bankruptcy Court for the Southern District of New York.

61.     In an effort to survive the bankruptcy, Chrysler LLC and Italian automaker Fiat S.p.A. entered into a strategic global alliance, confirmed by the execution of a Master Transaction Agreement.

62.     Through the Master Transaction Agreement, Fiat S.p.A. agreed to form a new entity, Chrysler Group LLC, which would then purchase substantially all of Chrysler LLC's assets and assume certain of Chrysler LLC's liabilities.

63.     On June 1, 2009, the bankruptcy court entered an order approving the Master Transaction Agreement and authorizing the sale of Chrysler LLC to Chrysler Group LLC according to the Mater Transaction Agreement's terms. The sale closed on June 10, 2009 (the "Sale Date").

64.     After certain amendments to the Master Transaction Agreement that were approved by the bankruptcy court, the Master Transaction Agreement ultimately required Chrysler Group LLC to assume all liabilities arising from vehicles that were sold prior to the Sale Date and were involved in vehicular accidents that occurred after the Sale Date, including negligence and wrongful death claims like those asserted by Kierra in this Complaint.

65.     Stated differently, Chrysler Group LLC agreed to assume all liabilities relating to pre-bankruptcy vehicles that were involved in post-bankruptcy crashes, including the Dodge Caravan at issue in this lawsuit.

66.     On July 21, 2011, Fiat S.p.A. acquired a majority ownership share in Chrysler Group LLC.  Over the next few years, Fiat S.p.A. would come to acquire entire ownership of Chrysler Group LLC.

67.     On December 15, 2014, Chrysler Group LLC was renamed FCA US LLC.

68.     FCA continues to manufacture and sell Chrysler, Dodge, Jeep, Fiat, and Alfa Romeo brand vehicles in Wisconsin and throughout the United States.

69.     As a result of the above corporate transactions and bankruptcy proceedings, FCA assumed liability for Chrysler Corporation's negligent acts and omissions as stated in this Complaint.

70.     FCA is additionally responsible for Kierra's injuries and Tyriq's death because of FCA's own negligent acts and omissions that occurred after the Sale Date.

71.     This is not the first time a clockspring assembly was found to be disconnected from a Dodge Caravan's electrical system following a post-bankruptcy collision where the driver-side front airbag failed to deploy.

72.     Similarly, this is not the first time a clockspring assembly was found to be disconnected from a Dodge-brand or Chrysler-brand vehicle's electrical system following a post-bankruptcy collision where the driver-side front airbag failed to deploy.

73.     Indeed, FCA has been aware of multiple incidents of clockspring assemblies not being properly connected to Dodge-brand and Chrysler-brand vehicles, including other Dodge Caravans.  FCA has had knowledge of these incidents from the Sale Date to today.

74. Despite knowing of other similar incidents involving a disconnected clockspring assembly, FCA took no action to investigate the cause of the disconnection or to warn owners and users of potentially affected vehicles.

75. Despite knowing of other similar incidents involving a disconnected clockspring assembly, FCA failed to issue a recall of the Dodge Caravan or other affected vehicles.

76. At no time following the Sale Date did FCA attempt to notify or warn any owner or user of the Dodge Caravan about the Dodge Caravan's dangerous condition, despite FCA's knowledge and ability to warn. Nor did FCA act to repair or replace the Dodge Caravan's clockspring assembly, despite FCA's ability to do so.

77. As a consequence of FCA's post-Sale Date failure to act, the Dodge Caravan's clockspring assembly remained negligently designed, manufactured, assembled, and installed on the date of the subject collision.

78. As a consequence of FCA's post-Sale Date failure to act, Kierra had no idea that she was driving a vehicle with an inoperable airbag.

79. Had Kierra known that she was driving a vehicle with an inoperable airbag, she would not have driven the Dodge Caravan on April 28, 2015, thus avoiding all of the injuries she suffered and the death of her son, Tyriq.

**Midas's Liability**

80. Midas shares responsibility with FCA and Methode for Kierra's injuries and the death of her son.

81. Midas owns and operates a chain of automotive service centers where Midas performs automotive inspection, repair, and maintenance services for a wide range of consumer and fleet vehicles. Midas's services include, but are not limited to, brake maintenance and

repair, oil changes, tire sales and repair, exhaust system repair and maintenance, steering system repair and maintenance, suspension repair and maintenance, battery installation and diagnostics, engine repair, maintenance, and diagnostics, computer system repair, maintenance, and diagnostics, heating and air conditioning system repair and maintenance, electrical system repair and maintenance, and airbag system repair and maintenance.

82.     Midas hires and employs mechanics, service technicians, and employees to perform its automotive inspection, repair, and maintenance services.

83.     Midas exercises full control over the acts and conduct of its mechanics, service technicians, and employees while they perform automotive inspection, repair, and maintenance services on behalf of Midas.

84.     Midas represents to the public that it provides "complete service for your car" and that Midas's "expert auto repair technicians are trained to perform diagnostic and repair services on all makes and models." Midas additionally advertises that "Midas stands for expertise, value, and professionalism." Midas states that it is "motivated by the values that have made us a success: trust, service, reliability and the famous 'customer first' commitment that built the Midas brand." Midas's motto is "Trust the Midas Touch." Midas states that "the Midas Touch is the New Gold Standard."

85.     Midas holds itself and its mechanics, service technicians, and employees out to the public as experts in the field of automotive repair, maintenance, and safety. Midas touts its mechanics, service technicians, and employees as being certified by the National Institute for Automotive Service Excellence, commonly referred to as "ASE certification."

86.     On or about March 9, 2015, Midas, through its mechanics, service technicians, and employees, inspected and performed maintenance services on the Dodge Caravan at a Midas service center located in Kenosha, Wisconsin.

87.     At this place and time, Midas, through its mechanics, service technicians, and employees, performed a full vehicle inspection of the Dodge Caravan.

88.     Midas represents that this full vehicle inspection is a comprehensive inspection of the vehicle's major components and systems that is designed to identify any current problems that may require repair or maintenance.  Midas emphasizes that it performs this comprehensive vehicle inspection for free with the purchase of any service in order to "[k]eep[] your car maintained and safe on the road we all share."

89.     Despite Midas holding itself and its mechanics, service technicians, and employees out as experts in the field of automotive repair, maintenance, and safety, Midas either failed to check the Dodge Caravan's airbag system, or did check the Dodge Caravan's airbag system but failed to discover or notify the owner or user of the Dodge Caravan about its dangerous condition: that the driver-side front airbag was inoperable.

90.     Had Midas or its mechanics, service technicians, and employees properly checked the Dodge Caravan's airbag system, Midas would have discovered that the Dodge Caravan's driver-side front airbag was inoperable, and Midas would have been able to notify or warn owners or users of the Dodge Caravan about the same.

91.     Had Midas or its mechanics, service technicians, and employees properly checked the Dodge Caravan's airbag system, the Dodge Caravan's clockspring assembly would have been repaired or replaced prior to the subject collision.

92. Midas, through its mechanics, service technicians, and employees, knew or should have known that the Dodge Caravan's driver-side front airbag would fail to deploy in the event of a front-end collision like the subject collision.

93. Midas, through its mechanics, service technicians, and employees, knew or should have known that, because of the inoperable airbag, the Dodge Caravan posed a risk of serious injury or death to occupants seated in the Dodge Caravan's driver seat in the event of a front-end collision like the subject collision.

94. Midas, through its mechanics, service technicians, and employees, did nothing to check or repair the Dodge Caravan's airbag system or to warn owners or users of the Dodge Caravan about the Dodge Caravan's dangerous condition, including the known risk of serious injury or death that would occur to occupants seated in the Dodge Caravan's driver seat should the Dodge Caravan be involved in a front-end collision like the subject collision.

95. As a result of Midas's negligent acts and omissions and the negligent acts and omissions of Midas's mechanics, service technicians, and employees, the Dodge Caravan's driver-side front airbag remained inoperable on the date Kierra was involved in the subject collision.

96. Kierra suffered severe personal injuries and the death of her child, Tyriq, because Midas and Midas's mechanics, service technicians, and employees failed to check or repair the Dodge Caravan's airbag system and failed to warn owners and users of the Dodge Caravan about the Dodge Caravan's dangerous condition.

## JURISDICTION & VENUE

97. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a)(1) because Kierra is a citizen of Ohio, FCA is a citizen of Delaware, the Netherlands, and the

United Kingdom, Methode is a citizen of Delaware and Illinois, Midas is a citizen of Delaware and Florida, and the amount in controversy exceeds $75,000.

98. Pursuant to the Wisconsin long-arm statute, Wis. Stat. §§ 801.05(1)(d), (3), (4)(a), (4)(b), and (13), this Court is authorized to exercise personal jurisdiction over FCA with respect to each and every claim stated against it because:

    a. FCA is engaged in substantial and not isolated activities within Wisconsin, whether such activities are wholly interstate, intrastate, or otherwise;

    b. This is an action claiming injury to person or property within or without Wisconsin arising out of an act or omission within Wisconsin by FCA;

    c. This is an action claiming injury to person or property within Wisconsin arising out of an act or omission outside Wisconsin by FCA and solicitation or service activities were carried on within Wisconsin by or on behalf of FCA; and

    d. This is an action claiming injury to person or property within Wisconsin arising out of an act or omission outside Wisconsin by FCA and products, materials, or things processed, serviced, or manufactured by FCA were used or consumed within Wisconsin in the ordinary course of trade.

99. This Court is authorized to exercise personal jurisdiction over FCA with respect to each and every claim stated against it because FCA enjoys such numerous, continuous, significant, and systematic contacts with Wisconsin that FCA may fairly be regarded as at home in Wisconsin.

100. FCA cannot deny this Court's authority to exercise personal jurisdiction over it for the following reasons:

    a. The claims for relief stated herein accrued in Wisconsin.

    b. Tyriq's death and the injuries Kierra suffered due to FCA's negligent and wrongful acts and omissions occurred in Wisconsin.

    c. FCA owns, operates, and/or authorizes over 100 Chrysler, Dodge, Jeep, Fiat, and Alfa Romeo dealerships throughout Wisconsin, which FCA uses to pervasively advertise, market, distribute, and sell its numerous vehicle lines,

including the Dodge Caravan vehicle line, to consumers and residents in Wisconsin.

d.   FCA owns, operates, and/or authorizes over 30 Mopar service centers throughout Wisconsin, which FCA uses to provide repair and maintenance services for its numerous vehicle lines, including the Dodge Caravan vehicle line, to consumers and residents in Wisconsin.

e.   At the above-referenced dealerships and service centers, FCA also advertises, markets, distributes, and sells non-Chrysler, Dodge, Jeep, Fiat, and Alfa Romeo vehicles to consumers and residents in Wisconsin and provides vehicle maintenance and repair services for non-Chrysler, Dodge, Jeep, Fiat, and Alfa Romeo vehicles to consumers and residents in Wisconsin.

f.   FCA owns and operates a massive distribution center in Milwaukee, Wisconsin, which FCA uses to distribute vehicle parts and maintenance equipment to FCA's dealerships and service centers throughout Wisconsin and the Midwest.

g.   Upon information and belief, FCA has contracts with its dealerships and service centers in Wisconsin where FCA agrees to come into Wisconsin's courts to defend claims relating to its products and services that cause injury in Wisconsin.

h.   FCA owns, operates, and maintains numerous websites which it actively uses to advertise, market, distribute, and sell its vehicles (including the Dodge Caravan vehicle line) and services to consumers and residents in Wisconsin. These websites include, but are not limited to, http://www.chrysler.com, http://www.dodge.com, http://www.fiatusa.com, http://www.jeep.com, http://www.alfaromerousa.com, http://www.mopar.com, and http://www.fcanorthamerica.com. In addition to these websites, FCA authorizes and endorses its dealerships and service centers to operate and maintain their own individual websites to advertise, market, distribute, and sell FCA's vehicles and services. FCA participates in the formation and content of these individual websites and promotes and provides access to these individual websites through its above-cited primary vehicle line websites.

i.   Through its vast network of websites and massive Internet presence in Wisconsin, FCA targets consumers and residents in Wisconsin by offering special deals and incentives available only to Wisconsin residents, including vehicle lease deals, vehicle financing deals, rebate incentives, and special vehicle service programs.

j.   FCA executes and performs purchase contracts, lease contracts, financing contracts, service contracts, and warranties with consumers and residents in Wisconsin. By executing and performing these contracts, FCA reasonably

expects to be hailed into court in Wisconsin in the event FCA is accused of breaching a contractual obligation. By executing and performing these contracts, FCA also avails itself of Wisconsin's courts and of the laws of Wisconsin in the event it believes a party has breached a contractual obligation with FCA.

k.  FCA avails itself of Wisconsin's courts and of the laws of Wisconsin to protect its business, property, proprietary, and intellectual property interests in Wisconsin.

l.  FCA submits to regulation by state and local governments in Wisconsin.

m.  FCA is registered with and authorized by the Wisconsin Department of Financial Institutions to engage in business in Wisconsin. FCA has designated a registered agent in Wisconsin to receive service of legal documents in Wisconsin.

n.  FCA oversees all recalls of its products in Wisconsin, including by directing consumers to visit one of its many dealerships or service centers in Wisconsin to have recall work performed.

o.  FCA gathers data about vehicles and vehicle owners in Wisconsin in order to facilitate its oversight of recalls relating to its vehicles.

p.  FCA employs thousands of Wisconsin citizens and residents in furtherance of its business activities in Wisconsin, including by selling, distributing, marketing, advertising, servicing, maintaining, and repairing FCA's numerous vehicle lines in Wisconsin, including the Dodge Caravan vehicle line.

q.  FCA owns and/or leases real property in Wisconsin through which it operates its business.

r.  FCA derives substantial revenues and profits from Wisconsin residents who purchase FCA's products and services.

101.  Pursuant to the Wisconsin long-arm statute, Wis. Stat. §§ 801.05(1)(d), (3), (4)(a), (4)(b), and (13), this Court is authorized to exercise personal jurisdiction over Methode with respect to each and every claim stated against it because:

a.  Methode is engaged in substantial and not isolated activities within Wisconsin, whether such activities are wholly interstate, intrastate, or otherwise;

b.   This is an action claiming injury to person or property within or without Wisconsin arising out of an act or omission within Wisconsin by Methode;

c.   This is an action claiming injury to person or property within Wisconsin arising out of an act or omission outside Wisconsin by Methode and solicitation or service activities were carried on within Wisconsin by or on behalf of Methode; and

d.   This is an action claiming injury to person or property within Wisconsin arising out of an act or omission outside Wisconsin by Methode and products, materials, or things processed, serviced, or manufactured by Methode were used or consumed within Wisconsin in the ordinary course of trade.

102.   This Court is authorized to exercise personal jurisdiction over Methode with respect to each and every claim stated against it because Methode enjoys such numerous, continuous, significant, and systematic contacts with Wisconsin that Methode may fairly be regarded as at home in Wisconsin.

103.   Methode cannot deny this Court's authority to exercise personal jurisdiction over it for the following reasons:

a.   The claims for relief stated herein accrued in Wisconsin.

b.   Tyriq's death and the injuries Kierra suffered due to Methode's negligent and wrongful acts and omissions occurred in Wisconsin.

c.   Methode knows and intends for its products, including the clockspring assembly at issue in this case, to make their way to Wisconsin consumers and residents.

d.   Methode knew and intended for its products, including the clockspring assembly at issue in this case, to be used by other parties, including Chrysler Corporation, in the production and distribution of vehicles to Wisconsin consumers and residents.

e.   Methode derives substantial revenues and profits from Wisconsin residents who purchase Methode's products and other products that contain Methode's products as a component part.

f.   The State of Wisconsin Investment Board holds an ownership interest in Methode.

g. Methode owns and operates several sales offices located near the border between Illinois and Wisconsin which Methode uses to pervasively sell and distribute its products and components to consumers in Wisconsin.

h. Methode owns, operates, and maintains an interactive website— http://www.methode.com—which it actively uses to advertise, market, distribute, and sell its products to consumers and residents in Wisconsin.

i. Methode avails itself of Wisconsin's courts and of the laws of Wisconsin to protect its business, property, proprietary, and intellectual property interests in Wisconsin.

j. Methode submits to regulation by state and local governments in Wisconsin.

104. Pursuant to the Wisconsin long-arm statute, Wis. Stat. §§ 801.05(1)(d), (3), (4)(a), (4)(b), and (13), this Court is authorized to exercise personal jurisdiction over Midas with respect to each and every claim stated against it because:

a. Midas is engaged in substantial and not isolated activities within Wisconsin, whether such activities are wholly interstate, intrastate, or otherwise;

b. This is an action claiming injury to person or property within or without Wisconsin arising out of an act or omission within Wisconsin by Midas;

c. This is an action claiming injury to person or property within Wisconsin arising out of an act or omission outside Wisconsin by Midas and solicitation or service activities were carried on within Wisconsin by or on behalf of Midas; and

d. This is an action claiming injury to person or property within Wisconsin arising out of an act or omission outside Wisconsin by Midas and products, materials, or things processed, serviced, or manufactured by Midas were used or consumed within Wisconsin in the ordinary course of trade.

105. This Court is authorized to exercise personal jurisdiction over Midas with respect to each and every claim stated against it because Midas enjoys such numerous, continuous, significant, and systematic contacts with Wisconsin that Midas may fairly be regarded as at home in Wisconsin.

106.     Midas cannot deny this Court's authority to exercise personal jurisdiction over it

for the following reasons:

    a.    The claims for relief stated herein accrued in Wisconsin.

    b.    Tyriq's death and the injuries Kierra suffered due to Midas's negligent and wrongful acts and omissions occurred in Wisconsin.

    c.    Midas knows and intends for its products and services, including its vehicle inspection, maintenance, and repair services, to be consumed in Wisconsin and by Wisconsin consumers and residents.

    d.    Midas owns, operates, and/or authorizes over 30 Midas service centers throughout Wisconsin, which Midas uses to provide vehicle inspection, repair, and maintenance services to consumers and residents in Wisconsin.

    e.    Midas derives substantial revenues and profits from Wisconsin consumers and residents who purchase Midas's products and services in Wisconsin.

    f.    Midas owns, operates, and maintains an interactive website—http://www.midas.com—which it actively uses to advertise, market, distribute, and sell its products and services to consumers and residents in Wisconsin.

    g.    Midas executes and performs franchise agreements with many of its service centers located in Wisconsin. Midas reasonably expects to be hailed into court in Wisconsin in the event Midas is accused of breaching an obligation with one of its franchisees. By executing and performing these contracts, Midas also avails itself of Wisconsin's courts and of the laws of Wisconsin in the event it believes a franchisee has breached a contractual obligation with Midas.

    h.    Midas executes and performs contracts and warranties with Wisconsin consumers and residents relating to the vehicle inspection, repair, and maintenance services it provides. Midas reasonably expects to be hailed into court in Wisconsin in the event Midas is accused of breaching a contractual obligation. By executing and performing these contracts, Midas also avails itself of Wisconsin's courts and of the laws of Wisconsin in the event it believes a party has breached a contractual obligation with Midas.

    i.    Midas avails itself of Wisconsin's courts and of the laws of Wisconsin to protect its business, property, proprietary, and intellectual property interests in Wisconsin.

    j.    Midas submits to regulation by state and local governments in Wisconsin.

k.   Midas is registered with and authorized by the Wisconsin Department of Financial Institutions to engage in business in Wisconsin. Midas has designated a registered agent in Wisconsin to receive service of legal documents in Wisconsin.

l.   Midas employs hundreds of Wisconsin citizens and residents in furtherance of its business activities in Wisconsin, including by inspecting, servicing, maintaining, and repairing vehicles throughout Wisconsin and by advertising and marketing these services in Wisconsin to Wisconsin consumers and residents.

m.   Midas owns and/or leases real property in Wisconsin through which it operates its business.

107.   Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims stated herein occurred in Kenosha County, Wisconsin.

## CONDITIONS PRECEDENT

108.   All conditions precedent have occurred or been performed.

## COUNT I—NEGLIGENCE
### (Against FCA)

109.   Kierra re-alleges and incorporates Paragraphs 1 through 108 of this Complaint as if fully stated herein.

110.   This Count I states a claim for negligence against FCA arising under Wisconsin law.

111.   Chrysler Corporation designed, manufactured, assembled, tested, inspected, and distributed the Dodge Caravan and the clockspring assembly contained within the Dodge Caravan.

112.   Chrysler Corporation owed the following duties of care:

a.   To design, manufacture, assemble, and distribute the Dodge Caravan in a condition that did not pose a risk of injury or death to occupants within the Dodge Caravan;

b. To properly design, manufacture, assemble, and install the clockspring assembly within the Dodge Caravan;

c. To properly design, manufacture, assemble, and equip the Dodge Caravan with all reasonably available safety technologies, including seatbelt pretensioners;

d. To adequately test, inspect, and ensure the quality of the Dodge Caravan, including by adequately testing, inspecting, and ensuring the quality of the Dodge Caravan's airbag system and clockspring assembly, before selling or distributing the Dodge Caravan to consumers; and

e. To adequately warn owners and potential users of the Dodge Caravan about any dangerous condition relating to the Dodge Caravan.

113. Chrysler Corporation breached its duties of care by:

a. Failing to design, manufacture, assemble, and distribute the Dodge Caravan in a condition that did not pose a risk of injury or death to occupants within the Dodge Caravan;

b. Failing to properly design, manufacture, assemble, and install the clockspring assembly within the Dodge Caravan;

c. Failing to properly design, manufacture, assemble, and equip the Dodge Caravan with all reasonably available safety technologies, including seatbelt pretensioners;

d. Failing to adequately test, inspect, and ensure the quality of the Dodge Caravan, including by adequately testing, inspecting, and ensuring the quality of the Dodge Caravan's airbag system and clockspring assembly, before selling or distributing the Dodge Caravan to consumers; and

e. Failing To adequately warn owners and potential users of the Dodge Caravan about any dangerous condition relating to the Dodge Caravan.

114. As a result of Chrysler Corporation's breaches, the Dodge Caravan's driver-side front airbag failed to deploy when it should have, causing serious injury to Kierra and death to Tyriq.

115. As a result of Chrysler Corporation's breaches, the Dodge Caravan was in an unreasonably dangerous condition on the date of the subject collision, causing serious injury to

Kierra and death to Tyriq.

116. Had Kierra known about the Dodge Caravan's dangerous condition, Kierra would not have driven the Dodge Caravan, thereby avoiding the injuries she suffered and Tyriq's death.

117. Chrysler Corporation knew or reasonably should have known that its breaches would cause injury or death to drivers or occupants of the Dodge Caravan.

118. FCA assumed liability and is legally responsible for Chrysler Corporation's negligent acts and omissions.

**WHEREFORE**, Plaintiff, Kierra Snow, demands judgment against Defendant, FCA US LLC, for all injuries and damages resulting from the incident giving rise to this action, whether already incurred or to be incurred in the future, including all actual damages, consequential damages, economic damages, non-economic damages, mental anguish, emotional distress, pain and suffering, lost wages, costs, and interest, and for any such further relief as the Court deems appropriate.

## COUNT II—NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS
### (Against FCA)

119. Kierra re-alleges and incorporates Paragraphs 1 through 108 of this Complaint as if fully stated herein.

120. This Count II states a claim for negligent infliction of emotional distress against FCA arising under Wisconsin law.

121. Chrysler Corporation designed, manufactured, assembled, tested, inspected, and distributed the Dodge Caravan and the clockspring assembly contained within the Dodge Caravan.

122. Chrysler Corporation owed the following duties of care:

a. To design, manufacture, assemble, and distribute the Dodge Caravan in a condition that did not pose a risk of injury or death to occupants within the Dodge Caravan;

b. To properly design, manufacture, assemble, and install the clockspring assembly within the Dodge Caravan;

c. To properly design, manufacture, assemble, and equip the Dodge Caravan with all reasonably available safety technologies, including seatbelt pretensioners;

d. To adequately test, inspect, and ensure the quality of the Dodge Caravan, including by adequately testing, inspecting, and ensuring the quality of the Dodge Caravan's airbag system and clockspring assembly, before selling or distributing the Dodge Caravan to consumers; and

e. To adequately warn owners and potential users of the Dodge Caravan about any dangerous condition relating to the Dodge Caravan.

123. Chrysler Corporation breached its duties of care by:

a. Failing to design, manufacture, assemble, and distribute the Dodge Caravan in a condition that did not pose a risk of injury or death to occupants within the Dodge Caravan;

b. Failing to properly design, manufacture, assemble, and install the clockspring assembly within the Dodge Caravan;

c. Failing to properly design, manufacture, assemble, and equip the Dodge Caravan with all reasonably available safety technologies, including seatbelt pretensioners;

d. Failing to adequately test, inspect, and ensure the quality of the Dodge Caravan, including by adequately testing, inspecting, and ensuring the quality of the Dodge Caravan's airbag system and clockspring assembly, before selling or distributing the Dodge Caravan to consumers; and

e. Failing To adequately warn owners and potential users of the Dodge Caravan about any dangerous condition relating to the Dodge Caravan.

124. As a result of Chrysler Corporation's breaches, the Dodge Caravan's driver-side front airbag failed to deploy when it should have, causing serious injury to Kierra and death to Tyriq.

125.    As a result of Chrysler Corporation's breaches, the Dodge Caravan was in an unreasonably dangerous condition on the date of the subject collision, causing serious injury to Kierra and death to Tyriq.

126.    Kierra suffered severe emotional distress by witnessing and experiencing the death of her son, Tyriq.

127.    Chrysler Corporation knew or reasonably should have known that its breaches would cause injury or death to drivers or occupants of the Dodge Caravan and severe emotional distress to anyone who witnessed and experienced such injury or death.

128.    FCA assumed liability and is legally responsible for Chrysler Corporation's negligent acts and omissions.

**WHEREFORE**, Plaintiff, Kierra Snow, demands judgment against Defendant, FCA US LLC, for all injuries and damages resulting from the incident giving rise to this action, whether already incurred or to be incurred in the future, including all actual damages, consequential damages, economic damages, non-economic damages, mental anguish, emotional distress, pain and suffering, lost wages, costs, and interest, and for any such further relief as the Court deems appropriate.

## COUNT III—NEGLIGENCE
### (Against FCA)

129.    Kierra re-alleges and incorporates Paragraphs 1 through 108 of this Complaint as if fully stated herein.

130.    This Count III states a claim for negligence against FCA arising under Wisconsin law.

131.    After the Sale Date, FCA owed a duty of care to adequately warn owners and users of the Dodge Caravan about any dangerous condition relating to the Dodge Caravan, to

issue a recall of the Dodge Caravan, and to ensure that the Dodge Caravan's clockspring assembly was repaired or replaced in a timely manner.

132.    FCA breached its duty of care by failing to adequately warn owners and users of the Dodge Caravan about the Dodge Caravan's dangerous condition, by failing to issue a recall of the Dodge Caravan, and by failing to ensure that the Dodge Caravan's clockspring assembly was repaired or replaced in a timely manner.

133.    As a result of FCA's breaches, the Dodge Caravan's driver-side front airbag failed to deploy when it should have, causing serious injury to Kierra and death to Tyriq.

134.    Had FCA provided adequate warning regarding the Dodge Caravan's dangerous condition, Kierra would not have driven the Dodge Caravan, thereby avoiding the injuries she suffered and the death of her son.

135.    Had FCA issued a recall of the Dodge Caravan, Kierra would have avoided the injuries she suffered and the death of her son.

136.    FCA knew or reasonably should have known that its breaches would cause injury or death to drivers or occupants of the Dodge Caravan.

**WHEREFORE**, Plaintiff, Kierra Snow, demands judgment against Defendant, FCA US LLC, for all injuries and damages resulting from the incident giving rise to this action, whether already incurred or to be incurred in the future, including all actual damages, consequential damages, economic damages, non-economic damages, mental anguish, emotional distress, pain and suffering, lost wages, costs, and interest, and for any such further relief as the Court deems appropriate.

## COUNT IV—NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS
### (Against FCA)

137.    Kierra re-alleges and incorporates Paragraphs 1 through 108 of this Complaint as if fully stated herein.

138.    This Count IV states a claim for negligent infliction of emotional distress against FCA arising under Wisconsin law.

139.    After the Sale Date, FCA owed a duty of care to adequately warn owners and users of the Dodge Caravan about any dangerous condition relating to the Dodge Caravan, to issue a recall of the Dodge Caravan, and to ensure that the Dodge Caravan's clockspring assembly was repaired or replaced in a timely manner.

140.    FCA breached its duty of care by failing to adequately warn owners and users of the Dodge Caravan about the Dodge Caravan's dangerous condition, by failing to issue a recall of the Dodge Caravan, and by failing to ensure that the Dodge Caravan's clockspring assembly was repaired or replaced in a timely manner.

141.    As a result of FCA's breaches, the Dodge Caravan's driver-side front airbag failed to deploy when it should have, causing serious injury to Kierra and death to Tyriq.

142.    Kierra suffered severe emotional distress by witnessing and experience the death of her son, Tyriq.

143.    FCA knew or reasonably should have known that its breaches would cause injury or death to drivers or occupants of the Dodge Caravan and severe emotional distress to anyone who witnessed and experienced such injury or death.

**WHEREFORE**, Plaintiff, Kierra Snow, demands judgment against Defendant, FCA US LLC, for all injuries and damages resulting from the incident giving rise to this action, whether already incurred or to be incurred in the future, including all actual damages, consequential

damages, economic damages, non-economic damages, mental anguish, emotional distress, pain and suffering, lost wages, costs, and interest, and for any such further relief as the Court deems appropriate.

## COUNT V—PUNITIVE DAMAGES
### (Against FCA)

144.    Kierra re-alleges and incorporates Paragraphs 1 through 108 of this Complaint as if fully stated herein.

145.    This Count V states a claim for punitive damages against FCA arising under the Wisconsin punitive damages statute, Wis. Stat. § 895.043.

146.    This Count V is asserted only with respect to FCA's negligent acts and omissions that give rise to Counts III and IV of this Complaint.

147.    After the Sale Date, FCA owed a duty of care to adequately warn owners and users of the Dodge Caravan about any dangerous condition relating to the Dodge Caravan, to issue a recall of the Dodge Caravan, and to ensure that the Dodge Caravan's clockspring assembly was repaired or replaced in a timely manner.

148.    FCA breached its duty of care by failing to adequately warn owners and users of the Dodge Caravan about the Dodge Caravan's dangerous condition, by failing to issue a recall of the Dodge Caravan, and by failing to ensure that the Dodge Caravan's clockspring assembly was repaired or replaced in a timely manner.

149.    As a result of FCA's breaches, the Dodge Caravan's driver-side front airbag failed to deploy when it should have, causing serious injury to Kierra and death to Tyriq.

150.    At the time of the subject collision, FCA knew about the Dodge Caravan's dangerous condition and the associated risk of injury or death for approximately six years.

151.    Notwithstanding FCA's knowledge of the Dodge Caravan's dangerous condition and the associated risk of injury or death, FCA did nothing to warn or protect owners or users of the Dodge Caravan, including Kierra and Tyriq, despite FCA's ability to do so.

152.    FCA's decision not to warn or protect owners or users of the Dodge Caravan's unsafe condition was motivated primarily—if not exclusively—by financial considerations.

153.    FCA's above-described acts and omissions constitute malicious conduct or the intentional disregard for Kierra's and Tyriq's rights.

**WHEREFORE**, Plaintiff, Kierra Snow, demands that her judgment against Defendant, FCA US LLC, include an award of punitive damages pursuant to Wis. Stat. § 895.043 for the acts and omissions alleged in Counts III and IV of this Complaint, along with all interest and costs thereon as allowed by law.

## COUNT VI—WRONGFUL DEATH
### (Against FCA)

154.    Kierra re-alleges and incorporates Paragraphs 1 through 108 of this Complaint as if fully stated herein.

155.    This Count VI states a claim for wrongful death against FCA arising under Wisconsin law.

156.    Chrysler Corporation committed a wrongful act by:

    a.    Failing to design, manufacture, assemble, and distribute the Dodge Caravan in a condition that did not pose a risk of injury or death to occupants within the Dodge Caravan;

    b.    Failing to properly design, manufacture, assemble, and install the clockspring assembly within the Dodge Caravan;

    c.    Failing to properly design, manufacture, assemble, and equip the Dodge Caravan with all reasonably available safety technologies, including seatbelt pretensioners;

d. Failing to adequately test, inspect, and ensure the quality of the Dodge Caravan, including by adequately testing, inspecting, and ensuring the quality of the Dodge Caravan's airbag system and clockspring assembly, before selling or distributing the Dodge Caravan to consumers; and

e. Failing To adequately warn owners and potential users of the Dodge Caravan about any dangerous condition relating to the Dodge Caravan.

157. Chrysler Corporation's wrongful acts actually and proximately caused or contributed to Tyriq's death.

158. Chrysler Corporation knew or reasonably should have known that its wrongful acts would cause injury or death to drivers or occupants of the Dodge Caravan.

159. FCA assumed liability and is legally responsible for Chrysler Corporation's wrongful acts.

160. FCA committed a wrongful act by failing to adequately warn owners and users of the Dodge Caravan about the Dodge Caravan's dangerous condition, by failing to issue a recall of the Dodge Caravan, and by failing to ensure that the Dodge Caravan's clockspring assembly was repaired or replaced in a timely manner.

161. FCA's wrongful acts actually and proximately caused or contributed to Tyriq's death.

162. FCA knew or reasonably should have known that its wrongful acts would cause injury or death to drivers or occupants of the Dodge Caravan.

163. If Tyriq's death had not ensued, FCA would have been liable to Tyriq in an action to recover for the injuries he suffered due to Chrysler Corporation's and FCA's wrongful acts.

164. As a result of Chrysler Corporation's and FCA's wrongful acts that caused Tyriq's death, Kierra has suffered and continues to suffer pecuniary loss. This pecuniary loss includes, but is not limited to:

    a.    Medical and hospital expenses;

    b.    Funeral expenses;

    c.    Burial, interment, and/or cremation expenses;

    d.    The value of Tyriq's probable wages and services calculated to the time when Tyriq would have reached the age of majority; and

    e.    The value of Tyriq's wages and services which Tyriq would have provided to Kierra after reaching the age of majority.

165.     As a result of Chrysler Corporation's and FCA's wrongful acts, Kierra forever lost the love, companionship, company, emotional support, aid, and cooperation of her son.

166.     As Tyriq's surviving lineal heir, Kierra is authorized by Wisconsin law, Wis. Stat. §§ 895.04(2) and 852.01(1)(c), to recover damages for Tyriq's wrongful death.

**WHEREFORE**, Plaintiff, Kierra Snow, demands judgment against Defendant, FCA US LLC, for all injuries and damages resulting from the incident giving rise to this action, whether already incurred or to be incurred in the future, including all actual damages, consequential damages, economic damages, non-economic damages, mental anguish, emotional distress, pain and suffering, lost wages, costs, and interest, and for any such further relief as the Court deems appropriate.

## COUNT VII—NEGLIGENCE
### (Against Methode)

167.     Kierra re-alleges and incorporates Paragraphs 1 through 108 of this Complaint as if fully stated herein.

168.     This Count VII states a claim for negligence against Methode arising under Wisconsin law.

169.     Methode owed the following duties of care:

a. To design, manufacture, assemble, install, and distribute the Dodge Caravan's clockspring assembly in a condition that did not pose a risk of injury or death to occupants within the Dodge Caravan;

b. To adequately test, inspect, and ensure the quality of the Dodge Caravan's clockspring assembly before selling or distributing the clockspring assembly; and

c. To adequately warn consumers and users of the Dodge Caravan about any dangerous condition relating to the Dodge Caravan's clockspring assembly.

170. Methode breached its duties of care by:

a. Failing to design, manufacture, assemble, install, and distribute the Dodge Caravan's clockspring assembly in a condition that did not pose a risk of injury or death to occupants within the Dodge Caravan;

b. Failing to adequately test, inspect, and ensure the quality of the Dodge Caravan's clockspring assembly before selling or distributing the clockspring assembly; and

c. Failing to adequately warn consumers and users of the Dodge Caravan about any dangerous condition relating to the Dodge Caravan's clockspring assembly.

171. As a result of Methode's breaches, the Dodge Caravan's driver-side front airbag failed to deploy when it should have, causing serious injury to Kierra and death to Tyriq.

172. Methode knew or reasonably should have known that its breaches would cause injury or death to drivers or occupants of the Dodge Caravan.

173. Had Kierra known about the Dodge Caravan's dangerous condition, Kierra would not have driven the Dodge Caravan, thereby avoiding the injuries she suffered and Tyriq's death.

**WHEREFORE**, Plaintiff, Kierra Snow, demands judgment against Defendant, Methode Electronics, Inc., for all injuries and damages resulting from the incident giving rise to this action, whether already incurred or to be incurred in the future, including all actual damages, consequential damages, economic damages, non-economic damages, mental anguish, emotional distress, pain and

suffering, lost wages, costs, and interest, and for any such further relief as the Court deems appropriate.

## COUNT VIII—NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS
### (Against Methode)

174.    Kierra re-alleges and incorporates Paragraphs 1 through 108 of this Complaint as if fully stated herein.

175.    This Count VIII states a claim for negligent infliction of emotional distress against Methode arising under Wisconsin law.

176.    Methode owed the following duties of care:

    a.    To design, manufacture, assemble, install, and distribute the Dodge Caravan's clockspring assembly in a condition that did not pose a risk of injury or death to occupants within the Dodge Caravan;

    b.    To adequately test, inspect, and ensure the quality of the Dodge Caravan's clockspring assembly before selling or distributing the clockspring assembly; and

    c.    To adequately warn consumers and users of the Dodge Caravan about any dangerous condition relating to the Dodge Caravan's clockspring assembly.

177.    Methode breached its duties of care by:

    a.    Failing to design, manufacture, assemble, install, and distribute the Dodge Caravan's clockspring assembly in a condition that did not pose a risk of injury or death to occupants within the Dodge Caravan;

    b.    Failing to adequately test, inspect, and ensure the quality of the Dodge Caravan's clockspring assembly before selling or distributing the clockspring assembly; and

    c.    Failing to adequately warn consumers and users of the Dodge Caravan about any dangerous condition relating to the Dodge Caravan's clockspring assembly.

178.    As a result of Methode's breaches, the Dodge Caravan's driver-side front airbag failed to deploy when it should have, causing serious injury to Kierra and death to Tyriq.

179.    Kierra suffered severe emotional distress by witnessing and experiencing the death of her son, Tyriq.

180.    Methode knew or reasonably should have known that its breaches would cause injury or death to drivers or occupants of the Dodge Caravan and severe emotional distress to anyone who witnessed and experienced such injury or death.

**WHEREFORE**, Plaintiff, Kierra Snow, demands judgment against Defendant, Methode Electronics, Inc., for all injuries and damages resulting from the incident giving rise to this action, whether already incurred or to be incurred in the future, including all actual damages, consequential damages, economic damages, non-economic damages, mental anguish, emotional distress, pain and suffering, lost wages, costs, and interest, and for any such further relief as the Court deems appropriate.

## COUNT IX—WRONGFUL DEATH
### (Against Methode)

181.    Kierra re-alleges and incorporates Paragraphs 1 through 108 of this Complaint as if fully stated herein.

182.    This Count IX states a claim for wrongful death against Methode arising under Wisconsin law.

183.    Methode committed a wrongful act by:

    a.    Failing to design, manufacture, assemble, install, and distribute the Dodge Caravan's clockspring assembly in a condition that did not pose a risk of injury or death to occupants within the Dodge Caravan;

    b.    Failing to adequately test, inspect, and ensure the quality of the Dodge Caravan's clockspring assembly before selling or distributing the clockspring assembly; and

    c.    Failing to adequately warn consumers and users of the Dodge Caravan about any dangerous condition relating to the Dodge Caravan's clockspring assembly.

184. Methode's wrongful acts actually and proximately caused or contributed to Tyriq's death.

185. Methode knew or reasonably should have known that its wrongful acts would cause injury or death to drivers or occupants of the Dodge Caravan.

186. If Tyriq's death had not ensued, Methode would have been liable to Tyriq in an action to recover for the injuries he suffered due to Methode's wrongful acts.

187. As a result of Methode's wrongful acts that caused Tyriq's death, Kierra has suffered and continues to suffer pecuniary loss. This pecuniary loss includes, but is not limited to:

      a.   Medical and hospital expenses;

      b.   Funeral expenses;

      c.   Burial, interment, and/or cremation expenses;

      d.   The value of Tyriq's probable wages and services calculated to the time when Tyriq would have reached the age of majority; and

      e.   The value of Tyriq's wages and services which Tyriq would have provided to Kierra after reaching the age of majority.

188. As a result of Methode's wrongful acts, Kierra forever lost the love, companionship, company, emotional support, aid, and cooperation of her son.

189. As Tyriq's surviving lineal heir, Kierra is authorized by Wisconsin law, Wis. Stat. §§ 895.04(2) and 852.01(1)(c), to recover damages for Tyriq's wrongful death.

**WHEREFORE**, Plaintiff, Kierra Snow, demands judgment against Defendant, Methode Electronics, Inc., for all injuries and damages resulting from the incident giving rise to this action, whether already incurred or to be incurred in the future, including all actual damages, consequential damages, economic damages, non-economic damages, mental anguish, emotional distress, pain and

suffering, lost wages, costs, and interest, and for any such further relief as the Court deems appropriate.

## COUNT X—NEGLIGENCE
### (Against Midas)

190.    Kierra re-alleges and incorporates Paragraphs 1 through 108 of this Complaint as if fully stated herein.

191.    This Count X states a claim for negligence against Midas arising under Wisconsin law.

192.    Midas owed the following duties of care:

    a.    To require its mechanics, service technicians, and employees to check and inspect the airbag system of every vehicle for which Midas provides service, including the Dodge Caravan's airbag system, to ensure that the airbag system is working properly; and

    b.    To require its mechanics, service technicians, and employees to notify or warn of all dangerous conditions of which they know or reasonably should know relating to a vehicle for which they provide service.

193.    Midas undertook the above duties of care by holding itself and its mechanics, service technicians, and employees out to the public as experts in the field of automotive repair, maintenance, and safety and by performing comprehensive vehicle inspections on all vehicles for which Midas provides service.

194.    Midas's customers reasonably expect and rely on Midas and its mechanics, service technicians, and employees to carry out the above duties of care when performing maintenance or repair services on a vehicle.

195.    Midas knows or reasonably should know that its customers rely on Midas's expertise and the expertise of Midas's mechanics, service technicians, and employees to carry out the above duties and to ensure the maintenance and safety of their vehicles.

196.    Midas breached its duties of care by:

   a.    Failing to require its mechanics, service technicians, and employees to check
         and inspect the airbag system of every vehicle for which Midas provides
         service, including the Dodge Caravan's airbag system, to ensure that the airbag
         system is working properly; and

   b.    Failing to require its mechanics, service technicians, and employees to notify or
         warn of all dangerous conditions of which they know or reasonably should
         know relating to a vehicle for which they provide service, including by failing
         to notify or warn of the Dodge Caravan's dangerous condition.

197.    Had Midas required its mechanics, service technicians, and employees to perform

the above acts, owners and users of the Dodge Caravan would have known about the Dodge

Caravan's dangerous condition.

198.    Had Midas required its mechanics, service technicians, and employees to perform

the above acts, Kierra would not have driven the Dodge Caravan on the date of the subject collision.

199.    Had Midas required its mechanics, service technicians, and employees to perform

the above acts, the Dodge Caravan's clockspring assembly would have been repaired or replaced

prior to the subject collision.

200.    As a result of these breaches, the Dodge Caravan's clockspring assembly

remained disconnected on the date Kierra was involved in the subject collision.

201.    As a result of these breaches, Kierra had no warning that the Dodge Caravan's

driver-side front airbag would be inoperable in the event of a front-end collision and no warning

that the Dodge Caravan was dangerous to drive on the date of the subject collision.

202.    As a result of these breaches, the Dodge Caravan's driver-side front airbag failed

to deploy when it should have, causing serious injury to Kierra and death to Tyriq.

203.    Midas knew or reasonably should have known that its breaches would cause

injury or death to drivers or occupants of the Dodge Caravan.

**WHEREFORE**, Plaintiff, Kierra Snow, demands judgment against Defendant, Midas International Corporation, for all injuries and damages resulting from the incident giving rise to this action, whether already incurred or to be incurred in the future, including all actual damages, consequential damages, economic damages, non-economic damages, mental anguish, emotional distress, pain and suffering, lost wages, costs, and interest, and for any such further relief as the Court deems appropriate.

## COUNT XI—NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS
### (Against Midas)

204.    Kierra re-alleges and incorporates Paragraphs 1 through 108 of this Complaint as if fully stated herein.

205.    This Count XI states a claim for negligent infliction of emotional distress against Midas arising under Wisconsin law.

206.    Midas owed the following duties of care:

      a.    To require its mechanics, service technicians, and employees to check and inspect the airbag system of every vehicle for which Midas provides service, including the Dodge Caravan's airbag system, to ensure that the airbag system is working properly; and

      b.    To require its mechanics, service technicians, and employees to notify or warn of all dangerous conditions of which they know or reasonably should know relating to a vehicle for which they provide service.

207.    Midas undertook the above duties of care by holding itself and its mechanics, service technicians, and employees out to the public as experts in the field of automotive repair, maintenance, and safety and by performing comprehensive vehicle inspections on all vehicles for which Midas provides service.

208.    Midas's customers reasonably expect and rely on Midas and its mechanics, service technicians, and employees to carry out the above duties of care when performing maintenance or

repair services on a vehicle.

209. Midas knows or reasonably should know that its customers rely on Midas's expertise and the expertise of Midas's mechanics, service technicians, and employees to carry out the above duties and to ensure the maintenance and safety of their vehicles.

210. Midas breached its duties of care by:

    a. Failing to require its mechanics, service technicians, and employees to check and inspect the airbag system of every vehicle for which Midas provides service, including the Dodge Caravan's airbag system, to ensure that the airbag system is working properly; and

    b. Failing to require its mechanics, service technicians, and employees to notify or warn of all dangerous conditions of which they know or reasonably should know relating to a vehicle for which they provide service, including by failing to notify or warn of the Dodge Caravan's dangerous condition.

211. Had Midas required its mechanics, service technicians, and employees to perform the above acts, owners and users of the Dodge Caravan would have known about the Dodge Caravan's dangerous condition.

212. Had Midas required its mechanics, service technicians, and employees to perform the above acts, Kierra would not have driven the Dodge Caravan on the date of the subject collision.

213. Had Midas required its mechanics, service technicians, and employees to perform the above acts, the Dodge Caravan's clockspring assembly would have been repaired or replaced prior to the subject collision.

214. As a result of these breaches, the Dodge Caravan's clockspring assembly remained disconnected on the date Kierra was involved in the subject collision.

215. As a result of these breaches, Kierra had no warning that the Dodge Caravan's driver-side front airbag would be inoperable in the event of a front-end collision and no warning that the Dodge Caravan was dangerous to drive on the date of the subject collision.

216.    As a result of these breaches, the Dodge Caravan's driver-side front airbag failed to deploy when it should have, causing serious injury to Kierra and death to Tyriq.

217.    Kierra suffered severe emotional distress by witnessing and experiencing the death of her son, Tyriq.

218.    Midas knew or reasonably should have known that its breaches would cause injury or death to drivers or occupants of the Dodge Caravan and severe emotional distress to anyone who witnessed and experienced such injury or death.

**WHEREFORE**, Plaintiff, Kierra Snow, demands judgment against Defendant, Midas International Corporation, for all injuries and damages resulting from the incident giving rise to this action, whether already incurred or to be incurred in the future, including all actual damages, consequential damages, economic damages, non-economic damages, mental anguish, emotional distress, pain and suffering, lost wages, costs, and interest, and for any such further relief as the Court deems appropriate.

<u>**COUNT XII—WRONGFUL DEATH**</u>
**(Against Midas)**

219.    Kierra re-alleges and incorporates Paragraphs 1 through 108 of this Complaint as if fully stated herein.

220.    This Count XII states a claim for wrongful death against Midas arising under Wisconsin law.

221.    Midas committed a wrongful act by:

a.    Failing to require its mechanics, service technicians, and employees to check and inspect the airbag system of every vehicle for which Midas provides service, including the Dodge Caravan's airbag system, to ensure that the airbag system is working properly; and

b.    Failing to require its mechanics, service technicians, and employees to notify or warn of all dangerous conditions of which they know or reasonably should

know relating to a vehicle for which they provide service, including by failing to notify or warn of the Dodge Caravan's dangerous condition.

222.  Midas's wrongful acts actually and proximately caused or contributed to Tyriq's death.

223.  Midas knew or reasonably should have known that its wrongful acts would cause injury or death to drivers or occupants of the Dodge Caravan.

224.  If Tyriq's death had not ensued, Midas would have been liable to Tyriq in an action to recover for the injuries he suffered due to Midas's wrongful acts.

225.  As a result of Midas's wrongful acts that caused Tyriq's death, Kierra has suffered and continues to suffer pecuniary loss.  This pecuniary loss includes, but is not limited to:

a.  Medical and hospital expenses;

b.  Funeral expenses;

c.  Burial, interment, and/or cremation expenses;

d.  The value of Tyriq's probable wages and services calculated to the time when Tyriq would have reached the age of majority; and

e.  The value of Tyriq's wages and services which Tyriq would have provided to Kierra after reaching the age of majority.

226.  As a result of Midas's wrongful acts, Kierra forever lost the love, companionship, company, emotional support, aid, and cooperation of her son.

227.  As Tyriq's surviving lineal heir, Kierra is authorized by Wisconsin law, Wis. Stat. §§ 895.04(2) and 852.01(1)(c), to recover damages for Tyriq's wrongful death.

**WHEREFORE**, Plaintiff, Kierra Snow, demands judgment against Defendant, Midas International Corporation, for all injuries and damages resulting from the incident giving rise to this action, whether already incurred or to be incurred in the future, including all actual damages,

consequential damages, economic damages, non-economic damages, mental anguish, emotional distress, pain and suffering, lost wages, costs, and interest, and for any such further relief as the Court deems appropriate.

## COUNT XIII—*RESPONDEAT SUPERIOR*
### (Against Midas)

228.    Kierra re-alleges and incorporates Paragraphs 1 through 108 of this Complaint as if fully stated herein.

229.    This Count XIII states a claim for *respondeat superior* liability against Midas for the negligent and wrongful acts and omissions of Midas's mechanics, service technicians, and employees.

230.    At all times material hereto, Midas's mechanics, service technicians, and employees who inspected and performed maintenance services on the Dodge Caravan were Midas's servants, and Midas was their master.

231.    At all times material hereto, Midas had the right to exercise full control over, and did in fact exercise full control over, the vehicle inspection, maintenance, and service activities of its mechanics, service technicians, and employees, including the vehicle inspection, maintenance, and service activities relating to the Dodge Caravan.

232.    At all times material hereto, Midas's mechanics, service technicians, and employees were acting within the scope of their employment with Midas.

233.    Midas's mechanics, service technicians, and employees owed the following duties of care:

    a.    To check and inspect the airbag system of every vehicle for which Midas provides service, including the Dodge Caravan's airbag system, to ensure that the airbag system is working properly; and

b.  To notify or warn of all dangerous conditions of which they know or reasonably should know relating to a vehicle for which they provide service, including the Dodge Caravan.

234.  Midas's mechanics, service technicians, and employees breached their duties by:

a.  Failing to check and inspect the airbag system of every vehicle for which Midas provides service, including the Dodge Caravan's airbag system, to ensure that the airbag system is working properly; and

b.  Failing to notify or warn of all dangerous conditions of which they know or reasonably should know relating to a vehicle for which they provide service, including by failing to notify or warn of the Dodge Caravan's dangerous condition.

235.  Had Midas's mechanics, service technicians, and employees not breached the above duties, owners and users of the Dodge Caravan would have known about the Dodge Caravan's dangerous condition.

236.  Had Midas's mechanics, service technicians, and employees not breached the above duties, Kierra would not have driven the Dodge Caravan on the date of the subject collision.

237.  Had Midas's mechanics, service technicians, and employees not breached the above duties, the Dodge Caravan's clockspring assembly would have been repaired or replaced prior to the subject collision.

238.  As a result of these breaches, Kierra had no warning that the Dodge Caravan's driver-side front airbag would be inoperable in the event of a front-end collision and no warning that the Dodge Caravan was dangerous to drive on the date of the subject collision.

239.  As a result of these breaches, the Dodge Caravan's clockspring assembly remained disconnected on the date Kierra was involved in the subject collision.

240.  As a result of these breaches, Kierra suffered severe emotional distress by witnessing and experiencing the death of her son, Tyriq.

241.    The above negligent and wrongful acts actually and proximately caused or contributed to Tyriq's death.

242.    If Tyriq's death had not ensued, Midas's mechanics, service technicians, and employees would have been liable to Tyriq in an action to recover for the injuries he suffered due to their wrongful acts.

243.    As a result of the wrongful acts of Midas's mechanics, service technicians, and employees that caused Tyriq's death, Kierra has suffered and continues to suffer pecuniary loss. This pecuniary loss includes, but is not limited to:

     a.   Medical and hospital expenses;

     b.   Funeral expenses;

     c.   Burial, interment, and/or cremation expenses;

     d.   The value of Tyriq's probable wages and services calculated to the time when Tyriq would have reached the age of majority; and

     e.   The value of Tyriq's wages and services which Tyriq would have provided to Kierra after reaching the age of majority.

244.    As a result of the wrongful acts of Midas's mechanics, service technicians, and employees, Kierra forever lost the love, companionship, company, emotional support, aid, and cooperation of her son.

245.    Pursuant to the doctrine of *respondeat superior*, Midas is legally responsible for the negligent and wrongful acts and omissions of its mechanics, service technicians, and employees, which directly and proximately caused injury and damage to Kierra and death to Tyriq.

246.    Midas knew or reasonably should have known that the negligent and wrongful acts and omissions of its mechanics, service, technicians, and employees would cause injury or death to drivers or occupants of the Dodge Caravan.

**WHEREFORE**, Plaintiff, Kierra Snow, demands judgment against Defendant, Midas International Corporation, for all injuries and damages resulting from the incident giving rise to this action, whether already incurred or to be incurred in the future, including all actual damages, consequential damages, economic damages, non-economic damages, mental anguish, emotional distress, pain and suffering, lost wages, costs, and interest, and for any such further relief as the Court deems appropriate.

## COUNT XIV—LOSS OF CONSORTIUM
### (Against All Defendants)

247.    Kierra re-alleges and incorporates Paragraphs 1 through 108 of this Complaint as if fully stated herein.

248.    This Count XIV states a claim for loss of consortium against FCA, Methode, and Midas arising under Wisconsin law.

249.    At all times material to this Complaint, Kierra was Tyriq's mother and Tyriq was Kierra's son.

250.    For the reasons stated in Counts I through IX of this Complaint, FCA, Methode, and Midas are legally responsible for Tyriq's death and the resultant injuries and losses related thereto.

251.    Due to FCA's, Methode's, and Midas's liability-producing misconduct, Kierra forever lost the love, companionship, company, emotional support, aid, and cooperation of her son.

252.    Kierra experienced this loss of consortium from the moment Tyriq passed away, Kierra continues to suffer this loss of consortium today, and Kierra will continue to experience this loss of consortium forever into the future.

253.    Due to FCA's, Methode's, and Midas's liability-producing misconduct that caused Tyriq's death, Kierra has suffered and will continue to suffer pain and suffering, mental anguish, and emotional distress.

254.    The aforementioned injuries and damages were actually and proximately caused by FCA's, Methode's, and Midas's wrongful and negligent acts and omissions.

255.    FCA, Methode, and Midas knew or reasonably should have known that their liability-producing misconduct would cause injury or death to drivers or occupants of the Dodge Caravan.

**WHEREFORE**, Plaintiff, Kierra Snow, demands judgment against Defendants, FCA US LLC, Methode Electronics, Inc., and Midas International Corporation, for all injuries and damages resulting from the incident giving rise to this action, whether already incurred or to be incurred in the future, including all actual damages, consequential damages, economic damages, non-economic damages, mental anguish, emotional distress, pain and suffering, lost wages, costs, and interest, and for any such further relief as the Court deems appropriate.

## DEMAND FOR JURY TRIAL

Plaintiff, Kierra Snow, demands a jury trial on all issues so triable.

Dated:  April 4, 2018

Respectfully submitted,

/s/ *Steven E. Nauman*
**STEVEN E. NAUMAN, ESQ.**
Florida Bar No.: 106126
Admitted to EDWI:  2/20/2018
**Morgan & Morgan, P.A.**
20 North Orange Avenue, Suite 1600
Orlando, FL 32801
Telephone:  (407) 244-3962
Fax:  (407) 245-3462
Primary Email:  snauman@forthepeople.com
Secondary Email:  mhoilette@forthepeople.com
*Counsel for Plaintiff*